h CARAWAY, J.
In this worker’s compensation action, the employee appeals that portion of the judgment which denied his claim for indemnity benefits, psychological treatment and certain medical expenses arising from a job-related injury. The workers’ compensation judge (WCJ) found that the employee’s minor on-the-job accident did not physically disable him and that his claim for mental injury did not require further psychiatric evaluation. Finding no error in these rulings, we affirm.

Facts

John Weeks worked as a carpenter’s apprentice for Angelo Iafrate Construction Co.[1] On October 16, 2000, he hit his left *968 shin with a sledge hammer while trying to remove a concrete form with a pry bar. Weeks described the resulting wound as a broken spot of skin resembling a dime. A paramedic at the job site cleaned and bandaged the wound and sent Weeks back to work. Weeks worked for the next two days, but continued to complain that the injury hurt.
Weeks was referred to a physician for medical treatment and diagnosed with a contusion and abrasion of the left lower leg. Upon the doctor’s recommendation, Weeks began performing a sedentary job at his old rate of pay. In his follow-up doctor visits over the next two weeks, Weeks claimed that his leg was the same and that he had an allergic reaction to the antibiotics prescribed to him. The medical records of these visits | ¡.indicate that Weeks made a few nonsensical statements in the exam room. The doctors maintained orders for antibiotics and sedentary work.
On October 27, 2000, Dr. James Dossey released Weeks for normal work but noted possible emotional or psychological problems based upon the inappropriate and inconsistent behavior exhibited by Weeks during his examination. Weeks returned to the job stating that he was unable to work despite the medical release. Iafrate fired him at that time.
Weeks chose to see an orthopedist, Dr. James Finley, on October 30, 2000 claiming that his condition had worsened. Dr. Finley saw no evidence of a bone fracture, but suspected that Weeks had a bone bruise and an underlying nondisplaced tibia fracture. Dr. Finley fitted Weeks with a short leg walking cast. Upon removal of the cast a week later, Weeks reported increased pain in his leg, although further x-rays and a whole body scan revealed no abnormality relating to the leg.[2] Weeks saw Dr. Finley until April of 2001, but further testing during that time continued to show no physical cause for the leg pain.
In July and August of 2001, Weeks visited two more orthopedic surgeons, Dr. Gordon Mead and Dr. Dale Boersma, with complaints of numbness and pain in the left leg. Neither physician found any objective evidence to support the complaints. Dr. Mead suggested that Weeks’s complaints were psychological in origin. At his final visit with Dr. Mead in January of 2002, Weeks reported feeling better after removing with a razor blade a small piece of metal beneath the skin in his left leg. Dr. Mead made Uno further recommendation for a psychological evaluation and recommended that Weeks return to any physical activity or work he desired.
On March 2, 2001, Weeks filed a disputed claim for compensation. At trial, Weeks claimed his entitlement to indemnity benefits, psychological treatment, medical expenses relating to the accident and penalties and attorney fees. After hearing all of the evidence, the WCJ signed a judgment awarding Weeks all of his requested medical expenses, with the exception of those related to the April 10, 2001 MRI of his back, and denying his claim for indemnity benefits, psychological treatment and penalties and attorney fees. After the WCJ denied his motion for new trial, Weeks appealed.

Indemnity Benefits/Physical Injury

On appeal, Weeks contends that he is entitled to temporary total disability (TTD) benefits through July 2, 2001 and *969 supplemental earning benefits (SEB) thereafter.
Temporary total disability benefits shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain notwithstanding the location or availability of any such employment or self-employment. La. R.S. 23:1221(l)(c).
14A claimant is entitled to receive supplemental earnings benefits if he sustains a work-related injury that results in the inability to earn 90% or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). The claimant bears the initial burden of proving, by a preponderance of the evidence, that the injury resulted in the inability to earn that amount, under the facts and circumstances of the case. Freeman v. Poulan/Weed, Eater, 93-1530 (La.1/14/94), 630 So.2d 733. If the claimant meets this burden, the burden shifts to the employer to prove that the claimant is physically able to perform a certain job and that the job was offered to the claimant, or that the job was available to her within her or the employer’s geographic region. R.S. 23:1221(3)(c)(i); Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. If the employer satisfied that burden, then the claimant must show, by clear and convincing evidence unaided by any presumption of disability, that she is unable to perform the employment offered or available, solely as a result of substantial pain. R.S. 23:1221(3)(c)(ii); Payne v. Lawn Lourd Lawn Service, 35,491 (La.App. 2 Cir. 12/5/01), 803 So.2d 321.
Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688 (La.12/02/97), 704 So.2d 1161; Banks, supra. In applying the manifest error-elearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id. If the factfinder’s findings are reasonable in light of the record reviewed in its | sentirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Seal, supra.
In this case, the medical records show that in Dr. Dossey’s medical opinion, Weeks’s injury had healed enough to return to work without restriction as of October 27, 2000. Likewise, Drs. Mead and Boersma could find no objective evidence to support the claims of pain and indicated that he should be able to work. The only contrary medical- opinion was that of Dr. Finley, who concluded that Weeks would not be able to work at his previous job on April 25, 2001. Despite this contrary medical opinion, however, repeated x-rays, a whole body bone scan, and a nerve conduction test conducted by Dr. Finley revealed no objective symptoms for Weeks’s complaints. While the depositions of Drs. Dossey and Mead are in the record, only the medical records of Dr. Finley were presented by Weeks.
Clearly, the record before us containssubstantial medical evidence which fails to bear out Weeks’s continued complaints of physical pain. Therefore, the WCJ’s choice of medical opinions, concluding that Weeks was able to return to work without restriction as of October 27, 2000, is a permissible view of the evidence and not clearly wrong. On these grounds, we find *970 no error in the determination that Weeks failed to prove his claims for temporary total or supplemental earnings benefits.

Mental Injury

Weeks also contends that the WCJ erred in concluding that Weeks failed to prove his psychological condition was related to the accident and, | fin the alternative, in failing to order a psychological evaluation of Weeks.
In order to recover benefits under Louisiana Worker’s Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course and scope of his employment. La. R.S. 23:1031(A). Where a mental injury or illness develops secondary to a physical injury sustained in a work-related accident, an employee is entitled to compensation benefits for any disability resulting from the mental injury and to reimbursement for mental treatment medical expenses. Charles v. South Central Industries, 96-0883 (La.11/25/96), 683 So.2d 706; Traweek v. City of West Monroe, 30,571 (La.App.2d Cir.5/13/98), 713 So.2d 655, writ denied, 98-1936 (La.11/6/98), 727 So.2d 449. Nevertheless, reviewing courts analyze claimed mental disability with utmost caution in view of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned. Traweek, supra.
In order to obtain compensation benefits for a mental injury caused by a physical injury, (1) the claimant must prove by clear and convincing evidence that the physical injury caused the mental injury, (2) the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and (3) the diagnosis must meet the most current criteria established by the American Psychiatric Association’s Diagnostic and Statistical Manual of Mental Disorders. La. R.S. 23:1021(7)(c), (d); Traweek, supra. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Id.
|7The evidence relating to mental injury in this case included the reports and deposition testimony of Drs. Dossey and Mead. Dossey reported that at his October 2000 doctor visits, Weeks behaved strangely and claimed to have had an allergic reaction to his antibiotics which included hallucinations and the inability to catch his breath. In his medical report of October 27, 2000, Dr. Dossey mentioned the possibility of mental problems. In his deposition, Dr. Dossey explained that he also indicated the possibility of a psychiatric referral to establish Weeks’s fitness for the workplace. He was not of the opinion that the psychiatric evaluation would be work-related because he was not aware of any incident that had caused psychological harm to Weeks. He offered no opinion on whether Weeks was a malingerer or had a psychological problem.
Because of his inability to find any objective evidence to support Weeks’s complaints of pain, Dr. Mead also suggested a psychiatric evaluation after his initial visit with Weeks. Mead’s report indicated the possibility that Weeks suffered from conversion hysteria[3] or was a malingerer. In his deposition, Dr. Mead stated that Weeks refused a psychological evaluation. Further, after his second visit with Weeks, even though Weeks had performed “surgery” on himself by removing the metal *971 shard, Dr. Mead did not make an additional recommendation for a psychological evaluation because of Weeks’s earlier refusal and the fact that he seemed to be doing better. Dr. Mead admitted that Weeks’s use of the [ Rrazor blade to excise the nodule signaled a possible psychiatric problem. The existence of the nodule, however, was not shown to be related to Weeks’s sledge hammer injury. In any event, Dr. Mead deferred the question of whether Weeks’s injury could have triggered psychological problems to experts in psychology.
Weeks also testified at trial. He stated that during the two-week period after his injury, the pain got worse and his leg did not function properly. He claimed that the medication the doctors gave him made him “nuts” and attributed his odd behavior during his doctor visits to the combination of antibiotics and painkillers. By the time the doctors released him to go back to work, he could barely walk. Weeks admitted that when he refused to go back to work and got fired, he was angry and told General Motors employees that he “knew what a can of gasoline was.” At trial, two GM employees confirmed that when he was fired, Weeks made statements about gasoline and burning everybody up. Weeks attributed this behavior to his anger with the physicians and problems with the prescribed medication.
Weeks testified that his leg continued to “hurt real bad” until the time he saw Dr. Finley. Weeks testified that he stopped seeing Dr. Finley for a time until his personal medical insurance paid his overdue medical bills. During the months he saw Dr. Finley, his leg got worse and the nodule appeared in his leg. At that time, his leg “turned in.” He saw Dr. Boersma because of the nodule and because Dr. Mead could find nothing wrong with him. When Dr. Boersma also found no objective evidence of physical injury, Weeks removed the nodule himself with a razor blade. He claimed |9to do “pretty good” after removing the nodule. Two weeks later, he began a job as a car mechanic which lasted two months. The only other employment Weeks performed after he left employment with Iafrate was another short-term job as a car mechanic and one house painting job. He stated that he experienced temporary improvement after his surgery, but his symptoms gradually increased.
Based upon this evidence, we can find no error in the trial court’s determination that Weeks failed to carry his burden of establishing that his alleged mental injury was caused by his work-related physical injury. Weeks failed to present any' psychiatric testimony to substantiate his claim of mental injury. It was only Weeks’s treating physicians in other specialties who suggested further psychiatric or psychological testing as a possible treatment. Neither doctor made a DSM diagnosis as required by La. R.S. 23:1021. Moreover, because these physicians do not have specialties in psychiatry or psychology as required by La. R.S. 23:1021(7)(d), their concerns did not establish by clear and convincing evidence mental injury in this case. Charles, supra at 710. On these grounds, Weeks’s argument lacks merit.
Alternatively, Weeks contends that the trial court erred in failing to order his employer to pay for a psychological evaluation. Weeks testified that he would now submit to a psychological evaluation. He stated that he had sought such treatment on his own at LSU Medical Center but was denied an appointment without a referral or court order. Specifically, he argues that the evaluation should be provided to him because his inability; to | inpay for such examination prejudices his ability to prove his case.
*972 The employee is given the right to select one treating physician in any field or spe-ciality. After his initial choice, prior consent from the employer is required to change the treating physician within that same field or speciality. However, the employee is not required to obtain approval for change to a treating physician in another field or speciality. La. R.S. 23:1121(B).
From our review of the procedural history of this case, and the provisions concerning medical and physician services under the Act and within the Office of Workers’ Compensation administrative rules, we find that in this instance it was incumbent upon Weeks to have raised the issue of a psychiatric evaluation prior to trial. At trial, Weeks had the burden of proving either physical injury and disability or mental injury secondary to his physical injury. While attempting to prove the physical injury by a doctor of his own choosing, Dr. Finley, he obtained no medical evaluation for his alleged psychiatric condition in advance of trial. Instead, he asserted as a fail-back position only that he should be provided psychological treatment by the employer. Although permitted by the WCJ, as shown by the pre-trial statement of issues, such piecemeal approach to the trial of Weeks’s claims is not the optimal procedure. Nevertheless, in the course of the trial, the WCJ judged the credibility of Weeks’s assertions of psychological injury and denied his request for psychological testing. From our review of the above evidence, Weeks’s admission that his odd behavior resulted from his medication, and the lack of any medical testimony relating | nhis mental state to his work-related injury, convinces us that no abuse of the WCJ’s discretion occurred.

Medical Expense Reimbursement

In his final argument, Weeks claims that the trial court erred in failing to award the medical expenses attributed to the April 10, 2001 MRI of his back.
An employer is obligated to furnish all necessary medical expenses related to a work injury. La. R.S. 23:1203. The plaintiff must prove the necessity of the treatment and the causal connection between the treatment and the employment-related accident by a preponderance of the evidence. Cleveland v. Delhi Guest Home, 29,506 (La.App.2d. Cir 5/7/97), 694 So.2d 607; Derouselle v. Vince Enterprises, Inc., 02-0945 (La.App. 3d Cir.2/5/03), 838 So.2d 866. The issues of necessity of treatment and causal relationship are questions of fact. Accordingly, the applicable standard of review regarding the hearing officer’s findings is manifest error-clearly wrong. Derouselle, supra.
The medical records from Dr. Finley’s office reveal that an MRI of Weeks’s lumbar spine was completed on April 10, 2001 at Lincoln General Hospital. Although the WCJ awarded Weeks all of the other medical expenses related to his visits with Dr. Finley, she denied reimbursement for this test. We can discern no manifest error in this determination. While the MRI occurred while Dr. Finley treated Weeks for leg pain, the purpose of the test was to evaluate Weeks’s lower back. Nothing in the record before us links the MRI to the leg injury. Accordingly, we find that the WCJ | ^reasonably concluded that this test was unrelated to the job-related injury at issue.

Conclusion

The judgment of the Office of Workers’ Compensation is affirmed. Costs of this appeal are assessed to Weeks.
AFFIRMED.

. At the time of his accident, Weeks was working at the General Motors Track Assembly Plant in Shreveport, LA, and by agreement between Angelo Iafrate Construction *968 and General Motors, General Motors is considered the statutory employer responsible for this claim.

. The bone scan and an April 2001 MRI revealed that Weeks suffered from significant lumbar scoliosis.

. Conversion hysteria or reaction is a psychological process in which the patient defends himself against gainful feelings by developing physical symptoms. In other words, the patient unconsciously "converts” a psychological problem into a physical one. Gremillion v. Babst Services, Inc., 418 So.2d 637 (La.1982), fin. 3 at 641.