LORI HATAWAY

VERSUS

AKAL SECURITY, INC., ET AL.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 15-06536
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ELIZABETH A. PICKETT
JUDGE**

**\*\*\*\*\*\*\*\*\*\*\*\***


Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.


**Kyzar, J., concurs, in part, dissents, in part, and assigns reasons.**



**AFFIRMED.**



**Maria A. Losavio**
**Losavio Law Office, LLC**
**Post Office Box 12420**
**Alexandria, LA 71315-2420**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF-PPELLANT:**
       **Lori Hataway**

**Jonathan L. Woods**
**Brian J. Lindsey**
**Preis PLC**
**Post Office Drawer 94-C**
**Lafayette, LA 70509**
**(337) 237-6062**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Akal Security, Inc.**
    **New Hampshire Insurance Co.**

**PICKETT, Judge.**

A workers' compensation claimant, her employer, and its insurer appeal a judgment that dismissed her claims for indemnity benefits, medical treatment including prescription medications and mileage reimbursement, as well as penalties and attorney fees, and dismissed the employer's claim for reimbursement of benefits it paid to the claimant because she failed to report income that she received while being paid benefits. For the following reasons, we affirm.

## FACTS

In October 2015, Lori Hataway filed a disputed claim for workers' compensation benefits against her employer AKAL Security, Inc. and its insurer, New Hampshire Insurance Company (hereinafter AKAL), seeking proper payment of indemnity and medical benefits, additional medical treatment, penalties, and attorney fees. Ms. Hataway claimed that she had been injured on January 20, 2015, while working for AKAL as an aviation security officer, when a fight broke out among some of the deported immigrants being transported on the airplane to which she was assigned.

Immediately after the fight, AKAL began paying Ms. Hataway indemnity and medical benefits. In time, Ms. Hataway's claims for medical treatment became complicated because no physiological basis could be found for her physical complaints and symptoms. Furthermore, her complaints developed a psychological component. Additionally, some confusion arose with regard to whom Ms. Hataway and how Ms. Hataway was to submit her claims for reimbursement of medical expenses. Ms. Hataway claimed that AKAL failed to pay timely for and/or approve all the medical treatment recommended by her physicians, and she sought to recover penalties and attorney fees from AKAL.

The matter proceeded to a trial on the merits on June 28, 2016. Ms. Hataway and her husband Dewey Pittman testified at trial. Medical evidence was presented by deposition and/or medical records. Documentation prepared by AKAL personnel provided additional information regarding the incident at issue.

Ms. Hataway testified to the events that led to her being injured and her claim for benefits, explaining that a fight broke out among some of the 101 deportees being transported that day. She stated that eleven of the deportees were being non-compliant with the guards' instructions and that, after the deportees and AKAL personnel were seated, "a riot broke out" behind her. She described straddling the arm rest of her seat in an attempt to tend to deportees around her. At that time, a Haitian seated behind her freed one of his hands from his handcuffs, jumped over the seat behind her, landing "square in" her back, then "crawled" over her shoulder and head, trying to get to a friend who needed help. After two other guards restrained the Haitian, the airplane's engines were stopped, order was restored among the deportees, and the flight resumed. Ms. Hataway remained aboard and completed the round-trip flight. Her version of the events was corroborated by a statement made by Edwin Pippin, another AKAL guard on the flight with Ms. Hataway.

Mr. Pittman testified that he met Ms. Hataway when she returned to the airport in Alexandria, stating that she looked scared and as though she was hurting and had been crying. He brought her to St. Frances Cabrini Hospital's emergency room, where she was diagnosed with a bruise on her back. Thereafter, Ms. Hataway sought treatment from nine medical professionals to whom she related various complaints including neck, shoulder, and back pain; her right arm and leg being drawn up and spastic; nightmares; and anxiety. Initially, Ms. Hataway's physicians made tentative diagnoses of lumbar radiculopathy, cervical

2

radiculopathy, possible rotator cuff tear or adhesive capsulitis or frozen right shoulder based on her complaints and their physical examinations of her. Nevertheless, diagnostic testing failed to reveal a physiological explanation for her complaints. After complaining of nightmares and anxiety, Ms. Hataway was referred to a psychologist, who diagnosed her as having conversion disorder, posttraumatic disorder, and pain syndrome related to physical condition.

During its cross-examination of Ms. Hataway and Mr. Pittman, AKAL presented evidence to prove that Ms. Hataway earned income while being paid compensation benefits without reporting it to AKAL as provided in La.R.S. 23:1208. AKAL argued that the evidence it produced established Ms. Hataway forfeited the workers' compensation benefits it had paid her and sought a judgment ordering her to reimburse it for all benefits it had paid her.

After taking the matter under advisement, the workers' compensation judge (WCJ) issued extensive reasons for ruling in which it thoroughly reviewed the parties' claims in light of the evidence. The WCJ determined that Ms. Hataway failed to prove she suffered a mental injury caused by mental stress, as provided by La.R.S. 23:1021(8)(b), or a mental injury caused by a physical injury, as provided by La.R.S. 23:1021(8)(c), and dismissed all of her claims against AKAL. The WCJ also determined that AKAL failed to prove its La.R.S. 23:1208 forfeiture claim and dismissed it. These findings were reduced to judgment and signed by the WCJ. Both parties appealed.

**ASSIGNMENTS OF ERROR**

Ms. Hataway assigns the following errors with the trial and the WCJ's judgment:

1. [Trial] court erroneously found plaintiff failed to prove a compensable work injury.

3

2. [Trial] court erroneously found no physical-mental injury was proven by the injured worker.

3. Trial court erred in allowing expansion of the pleadings and/or ruling to include whether a compensable work accident had occurred since that was not an issue presented at trial.

4. Trial court erred in allowing expansion of the pleadings by allowing defendants to ask questions of the injured worker at trial regarding possible income from Facebook postings and the filing of exhibits in connection therewith and the subsequent allowing defendants to file supplemental and amended pleadings alleging fraud defense over the timely objection of plaintiff's counsel.

5. Trial court erred in allowing Dr. Strother's deposition to be admitted into evidence over the timely objection of plaintiff's counsel.

6. Trial court erred in not awarding benefits, penalties[,] and attorney fees for statutory violations.

AKAL assigns one error: "The [WCJ] erred in denying the La. R.S. 23:1208 defense of the Employer."

## STANDARD OF REVIEW

Appellate courts review a WCJ's factual findings pursuant to the manifest error or clearly wrong standard of review. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). This standard of review precludes an appellate court from setting aside a trial court's finding of fact in the absence of a manifest error or unless it is clearly wrong. *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). In applying the manifest error-clearly wrong standard, the appellate court must determine whether the fact finder's conclusion was a reasonable one, not whether it was right or wrong. *Id*.

## DISCUSSION

*Compensable Claim*

In her first assignment of error, Ms. Hataway asserts that the WCJ erred in finding that she failed to prove she sustained a compensable injury on January 20,

2015, because AKAL stipulated at trial that an accident occurred that day.[1] We reviewed the pleadings and the parties' recitations at trial and find they contradict this contention. Prior to the start of the trial, the parties presented stipulations to the WCJ. Counsel for Ms. Hataway stated that the parties stipulated Ms. Hataway reported "an accident" as a result of the fight on January 20, 2015, as contemplated by La.R.S. 23;1031(1). Counsel for AKAL responded, "I will agree that she . . . The riot is the only issue, but outside of that everything else, yes, I'll agree."

These recitations do not establish that the parties stipulated an accident occurred on January 20, 2015. AKAL's counsel did not agree with the proposed stipulation. His response to the proposed stipulation is equivocal and unclear as to whether he agreed that "the riot" occurred, that the occurrence of "the riot" was at issue, or that "everything else" was at issue.

Furthermore, near the end of the presentation of her case, Ms. Hataway called Mr. Pittman to testify. At that time, counsel for AKAL questioned the need for Mr. Pittman to testify, stating, "This is a penalties and attorney[] fees claim, not entitlement to benefits, going forward." The WCJ immediately questioned why AKAL had previously sought a continuance of the trial to obtain additional medical evidence, when counsel for Ms. Hataway had argued at that time "this was just a penalty and attorney fee case on these late payments and late authorizations." The WCJ then reminded counsel, "I put the trial off, expressly telling the parties I wanted everything conceivable to come before the Court." Neither party indicated any disagreement with the WCJ's recitation of those facts or objected to the trial proceeding on those issues. Accordingly, we conclude that no stipulation existed

---

[1] Accident is defined, in part, as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently . . . directly producing at the time objective findings of an injury[.]" La.R.S. 23:1021(1). Injury is defined to "include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom." La.R.S. 23:1021(8)(a).

as to the "riot" being an "accident" for purposes of Ms. Hataway's workers' compensation claim.

Ms. Hataway next argues that the WCJ erred in finding she did not prove she suffered a compensable mental injury caused by a physical injury during the fight as provided in La.R.S. 23:1021(8)(c). In *Weeks v. Angelo Iafrate Construction Co.*, 37,255, p. 6 (La.App. 2 Cir. 6/25/03), 850 So.2d 966, 970, the second circuit set out the claimant's burden of proof when seeking compensation benefits for a mental injury caused by a physical injury, as follows:

> (1) the claimant must prove by clear and convincing evidence that the physical injury caused the mental injury, (2) the mental injury must be diagnosed by a licensed psychiatrist or psychologist, and (3) the diagnosis must meet the most current criteria established by the American the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders.

The *Weeks* court further instructed that "[t]o prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." *Id.*

The WCJ thoroughly reviewed the medical evidence beginning with Ms. Hataway's first visit for medical treatment after the incident at St. Frances Cabrini Hospital in Alexandria, progressing through the numerous physicians she consulted and the extensive tests performed to diagnose her problems. Ms. Hataway was treated and/or evaluated by a general practitioner, three orthopedic surgeons, two neurosurgeons, a chiropractor, a psychologist, and a psychiatrist. Some of the diagnostic test results did not correspond with objective findings during physical examination. For example, Dr. Ricardo Leoni, a neurosurgeon who examined Ms. Hataway, observed that when he conducted muscle-strength testing on her, she had total weakness, but her right arm and leg were contracted in a spastic-like position and could not be moved. He found these

test results confusing because Ms. Hataway had normal reflexes. Moreover, three of the physicians who examined Ms. Hataway opined that she had a conversion disorder.

Ms. Hataway strenuously argues that the WCJ erred in finding she did not prove she suffered a physical injury that caused her mental injury. She asserts that the WCJ applied the wrong burden of proof to this claim. Pointing to *Traweek v. City of West Monroe*, 30,571, p. 8 (La.App. 2 Cir. 5/13/98), 713 So.3d 655, 661, *writ denied*, 98-1936 (La. 11/6/98), 727 So.2d 449, Ms. Hataway argues that she only had to prove she was physically injured in the fight, not that the physical injury "itself [rose] to the level of compensable injury of a physical nature under La.R.S. 23:1021(7)(a)."

In *Traweek*, the court determined that the claimant proved he suffered a physical trauma when pepper spray was sprayed in his face. The court noted that the pepper spray was "momentarily debilitating," having caused a burning sensation to the claimant's skin, irritation of his eyes, throat, and nose, and difficulty breathing. The court then concluded that these conditions were objective evidence of a physical injury and found the fact that "the physical injury is short-lived with virtually no risk of lasting physical effects" to be of no consequence. *Id.* The court reiterated, however, "[t]he critical inquiry is whether the conclusive psychiatric testimony can link this physical trauma as the cause of the mental illness of the employee." *Id.*

We need not address this argument because Ms. Hataway's medical evidence failed to establish that her mental injury was caused by her physical injury. S. Hugh Bryan, Ph.D., Ms. Hataway's treating psychologist, diagnosed her with conversion disorder, severe posttraumatic stress disorder, and pain disorder associated with a general medical condition and psychological factors. He defined

7

conversion disorder as "a mental condition in which a person exhibits physical symptoms that do not correlate to physical conditions." He opined that both the conversion disorder and the posttraumatic stress disorder were caused by "the traumatic event, work accident."

Dr. Bryan did testify that he thought at some point Ms. Hataway had "something organic, some physiological medical condition and also something psychological" going on. He used the term "physical dysfunction" when referencing Ms. Hataway's physical issues, but he did not testify that she was physically injured in the fight or that a physical injury caused her mental injuries. Accordingly, Dr. Bryan's testimony does not establish that the WCJ manifestly erred in finding that Ms. Hataway failed to prove by clear and convincing evidence that her mental injury was caused by a physical injury.

*Expansion of Pleadings re:  Compensable Injury*

Ms. Hataway next argues that the WCJ erred in allowing an expansion of the pleadings at trial to include the issue of whether she suffered a compensable injury on January 20, 2015. The enlargement of pleadings was addressed in *Barham & Arceneaux v. Kozak*, 02-2325, p. 16-17 (La.App. 1 Cir. 3/12/04), 874 So.2d 228, 241-242, *writ denied*, 04-930 (La. 6/4/04), 876 So.2d 87, where the court explained:

> Louisiana Code of Civil Procedure article 1154 provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended. LSA-C.C.P. art. 1154. However, according to the editor's notes to Article 1154, this sentence does not contemplate the *adding* of an issue not pleaded, but rather allows the pleading of material facts for an issue pleaded only generally or as a legal conclusion. A timely objection to an attempt to enlarge the pleadings, coupled with the failure to move for an amendment to the pleadings, is fatal to an issue not raised by the pleadings.

In its Answer to Ms. Hataway's Disputed Claim for benefits, AKAL denied that she was injured in the course and scope of her employment and that she suffered a disabling injury. Therefore, the WCJ properly allowed AKAL to enlarge its pleadings and present evidence of material facts on that issue.

**_Expansion of Pleadings Re: AKAL's La.R.S. 23:1208 Defense_**

Ms. Hataway also urges that the WCJ erroneously allowed an expansion of the pleadings when AKAL questioned her regarding possible income that she earned while receiving workers' compensation benefits. Prior to the trial starting, counsel for Ms. Hataway broached the subject of AKAL's defense, acknowledging that she was aware AKAL had made general allegations of the defense, but she pointed out that AKAL had not pled specific facts supporting the defense. She, therefore, asked that that defense be stricken and that the pleadings not be expanded to include it. The WCJ observed that although counsel was correct that specific facts must be pled for the defense, he has discretion to allow an amendment of the pleadings during trial if "something comes out" that presents the issue of whether a misrepresentation has been made.

Counsel for AKAL then stated that he had no specific factual evidence when he plead the defense in his Answer but had acquired such evidence shortly before trial. AKAL also included the defense in its pre-trial statement. Ultimately, the WCJ granted the motion to strike with the proviso that he would not preclude an expansion of the pleadings if the issue came up during the trial. The issue did come up during trial. When questioning Ms. Hataway, counsel for AKAL asked her whether she had been unable to work and unable to earn any income since her accident. She responded, "Yes. We raise Great Pyrenees dogs[,] and I post them on Facebook for my husband while he's at work." Counsel for AKAL proceeded to ask additional questions, and counsel for Ms. Hataway objected to an expansion

9

of the pleadings, noting that the WCJ had previously granted her motion to strike the defense.

Under the facts before us, we cannot say that the WCJ abused his great discretion in allowing AKAL to proceed with its defense in light of Ms. Hataway's response to its open-ended question about her ability to work and/or earn income since the accident. AKAL asserted the defense in its answer, and Ms. Hataway's went beyond the question asked and raised the issue of whether she was earning income.

### Dr. Strother's Deposition

In this assignment of error, Ms. Hataway argues that the WCJ erred in allowing AKAL to introduce the deposition of Dr. Darren Strother, a psychiatrist, into evidence. Dr. Strother examined Ms. Hataway at AKAL's request. AKAL introduced Dr. Strother's deposition to defeat Ms. Hataway's claims that its failure to timely pay the medical expenses associated with her mental injury entitled her topenalties and attorney fees.

The WCJ noted that of the medical professionals from whom Ms. Hataway sought treatment after the incident, Dr. Strother was the only one who questioned the veracity of her complaints, opining that she was malingering. Furthermore, there is no indication the WCJ relied on Dr. Strother's opinion in rendering his decision. For these reasons, this assignment of error lacks merit.

### Penalties and Attorney Fees

Ms. Hataway seeks penalties and attorney fees for AKAL's failure to properly pay various benefits. Our affirmation of the WCJ's determination that Ms. Hataway failed to prove her claim for workers' compensation benefits pretermits the need to address these issues.

*AKAL's 23:1208 Defense*

AKAL urges that the WCJ erred in finding that it failed to prove its claim that Ms. Hataway did not report income that she earned while receiving indemnity benefits after certifying that she was not receiving income from any source after she was injured. At issue is Ms. Hataway's "No" response to this question on the "Employee's Monthly Report of Earnings" form that AKAL required her to complete each month: "For the period covered in this report, were you self-employed or involved in any business enterprise? **These include but are not limited to** farming, sales work, operating a business (even if the business lost money), child care, yard work, mechanical work, or any type of family business." AKAL asserts that it proved Ms. Hataway generated income through the sale of Great Pyrenees puppies, automotive parts, and jewelry but certified to it that she was not earning any income while receiving workers' compensation benefits. Therefore, it argues that she forfeited her right to all the benefits it paid her and must reimburse it for those benefits paid.

This claim is governed by La.R.S. 23:1208 which provides, in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In *Resweber v. Haroil Construction Co.*, 94-2708, p. 14 (La. 9/5/95), 660 So.2d 7, 16, our supreme court outlined the proof required to prove fraud under La.R.S. 23:1208:

> By its plain words Section 1208 requires only that 1) the claimant make a false statement or representation, 2) the statement or representation be willfully made, and 3) the statement or

11

representation be made for the purpose of obtaining workers' compensation benefits.

The legislature has made a policy decision that willful and deliberate false statements made specifically for the purpose of obtaining workers' compensation benefits is an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over recent years to make Section 1208 easier to enforce and to make its penalties stronger.

The supreme court further explained that the false representations must be made for the purpose of obtaining benefits and must be more than inadvertent or inconsequential statements:

It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id.* Section 23:1208 does not require that the employer show prejudice. *Id.*

We have carefully reviewed the evidence AKAL presented in support of its forfeiture claim and find that a reasonable factual basis exists for the WCJ's denial of AKAL's claim of fraud. Ms. Hataway denied having received any income since the incident. She acknowledged that she made Facebook posts to sell Great Pyrenees puppies and listed her cell phone number for inquiries. She explained, however, that she listed her cell number because her husband could not receive calls at work and that she gave whatever money paid for puppies to her husband to repair his Jeep. She further explained that Mr. Pittman performed all the work associated with the puppies because she could not walk to the kennels where they were housed and could not perform any of the care they required.

Ms. Hataway's testimony was essentially the same with regard to the automotive parts. She also acknowledged advertising doves for sell on Facebook but explained that she did not sell any of the doves and ended up giving them

12

away. She also testified that she did not sell any of the jewelry she posted on Facebook. Ms. Hataway further acknowledged owning goats and donkeys and selling two goats but testified that she sold the two goats approximately two years before trial, which would have been prior to her receiving compensation benefits.

Mr. Pittman's testimony corroborated Ms. Hataway's testimony on all but one issue. He denied having sold any Jeep parts, explaining that they were advertised for sale but none had sold. Ms. Hataway and Mr. Pittman both testified that they filed separated tax returns.

The WCJ found the testimony of Ms. Hataway and Mr. Pittman credible. He explained that they were not aware of the AKAL's Section 1208 claim before trial because AKAL had been allowed to amend their pleadings during trial to assert the claim. The WCJ also observed that Mr. Pittman was sequestered and not alone with Ms. Hataway once the trial began before he testified; therefore, Mr. Pittman had no way of knowing what her testimony was on these issues. The WCJ concluded that they had no time to collude and discuss what responses they would make to AKAL's claims.

We find no basis to question the WCJ's credibility evaluations and no error in his determination that AKAL failed to prove its claim.

## DISPOSITION

For the reasons set forth herein, the judgment of the WCJ is affirmed in all respects. Costs are assessed equally to Lori Hataway and the defendants, AKAL Security, Inc. and New Hampshire Insurance Company.

**AFFIRMED.**

13

LORI HATAWAY

VERSUS

AKAL SECURITY, INC., ET AL.


**KYZAR, J., concurs in part, dissents in part, and assigns reasons**

I disagree with the majority in affirming of the decision of the Workers Compensation Judge ("WCJ") finding that Ms. Hataway did not prove entitlement to benefits or a compensable mental injury caused by a physical injury, and thus find that the WCJ erred in dismissing the workers' compensation claim as a whole. The evidence established that Ms. Hataway was injured when the deportee kneed her in the back while attempting to jump over her during the event that occurred on the transport plane, whether the event is referred to as a "riot" or otherwise. The testimony of Mr. Pippin, another Akal guard on the same flight, corroborated Ms. Hataway's testimony as to the event. It is undisputed that the event did occur. When Ms. Hataway arrived back at home base after the flight, Mr. Pittman testified that he picked her up and that she looked as if she had been crying and was hurting, evidence of a physical injury and certainly a traumatic one. She was seen that night at St. Francis Cabrini Hospital where she was observed to have, and was diagnosed with, a contusion on her back. Indeed, there was no real dispute that Ms. Hataway was injured physically, in that the defendant was not contesting her entitlement to benefits going forward at the trial, as evidenced by

counsel's objection to the testimony of Mr. Pittman, stating, "This is a penalties and attorney's fees claim, not entitlement to benefits, benefits going forward." This statement, in my view, clearly establishes that the parties indeed were stipulating to her entitlement to benefits, though defendant did not wish to characterize the event that occurred on the plane to be a "riot," which would seem to have greater legal and corporate implications for the company beyond the realm of a workers' compensation claim. Accordingly, the WCJ erred in terminating current benefits and dismissing the claim as a whole given the clear stipulation of the defendant that benefits were not the issue before the WCJ.

As to the payment for treatment for mental injury, the extent of the physical injury suffered by Ms. Hataway in the event occurring on the plane, including its severity or its duration, is not controlling. *Traweek v. City of West Monroe*, 30,571, p. 8 (La.App. 2 Cir. 5/13/98), 713 So.3d 655, 661, *writ denied*, 98-1936 (La. 11/6/98), 727 So.2d 449. The question becomes whether there was clear and convincing evidence that the mental injuries resulted from the event and the physical injury she suffered therefrom. As the court in *Traweek* notes, "[t]he critical inquiry is whether the conclusive psychiatric testimony can link this physical trauma as the cause of the mental illness of the employee." *Id.* There was such a link presented here. S. Hugh Bryan, Ph.D., Ms. Hataway's treating psychologist, diagnosed her with conversion disorder, severe posttraumatic stress disorder, and pain disorder associated with a general medical condition and psychological factors. He defined conversion disorder as "a mental condition in which a person exhibits physical symptoms that do not correlate to physical conditions." However, he opined that both the conversion disorder and the posttraumatic stress disorder were caused by "the traumatic event, work accident." Certainly this "traumatic event, work accident" as referred to by the psychologist

included the physical injuries she suffered as a result of the incident, however sever or slight they might have been. Dr. Bryan further testified that he thought at some point Ms. Hataway had "something organic, some physiological medical condition and also something psychological" going on, a clear indication that the mental condition was indeed related to the physical condition and vice versa. He did use the term "physical dysfunction" when referencing Ms. Hataway's physical issues, and although he did not specifically testify that she was physically injured during the event on the fight, there is no doubt but that she received at least some injury as was diagnosed at St. Francis Cabrini at the conclusion of the flight. Prior to the incident on the plane, Ms. Hataway was experiencing no physical impairments but suffered from diagnosed back and shoulder pain extensively thereafter. Even assuming that her shoulder condition described as frozen shoulder syndrome and bulging discs in her low back were degenerative in nature, she was asymptomatic prior to the incident.

> A claimant who suffers from a pre-existing medical condition is also entitled to benefits if the accident aggravated, accelerated or combined with the pre-existing condition to produce disability. *Atwell*, 06–0392 at 4, 951 So.2d at 352. An employer takes the worker as he finds him. An abnormally susceptible worker is entitled to no less protection under the compensation statute than a healthy worker. *Stelly v. Guy Scroggins, Inc.*, 96–401, pp. 7–8 (La.App. 3d Cir.10/9/96), 682 So.2d 782, 786, *writ denied.* 96–3060 (La.2/7/97), 688 So.2d 503.

*Sevin v. Chevrolet*, 08-1362 (La.App. 1 Cir. 4/30/09, 9–10), 24 So.3d 879, 885–86.

Accordingly, I would reverse the judgment of the WCJ terminating benefits and dismissing her workers compensation claim. Though I conclude Ms. Hataway is indeed entitled to benefits for her physical and mental injuries, and thus her entitlement to payment of mileage expenses and medical bills for the treatment of the same, I would affirm the WCJ's decision as to penalties and attorney fees based on the WCJ's conclusion that there was a reasonable basis for the defendants to bring the matter to litigation recognizing the great discretion of the WCJ in

deciding whether to allow or to disallow such. *Mouton v. Gulfstream Servs.*, 2008-1186 (La.App. 3 Cir. 5/6/09), 11 So.3d 1135, 1137.

In all other respects, I concur with the majority.