# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-608

**GARRETT BASS**

**VERSUS**

**CHRISTOPHER SEPULVADO, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

REMAND FROM THE LOUISIANA SUPREME COURT
OF THE APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 70149
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John E. Conery, D. Kent Savoie, Van H. Kyzar, Sharon Darville Wilson, and Gary J. Ortego,[1] Judges.

**REVERSED AND REMANDED.**

**Savoie, J.**, dissents and assigns written reasons.

**Kyzar, Judge,** dissents and assigns reasons.

---

[1] Judge Gary J. Ortego was elected to and is now sitting for the remainder of the term of Judge John Saunders, now deceased.

**William D. Dyess**
**Dyess Law Firm**
**207 Church Street, Suite 106**
**Post Office Box 18**
**Natchitoches, Louisiana 71457**
**(318) 352-5880**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Garrett Bass**

**Misty Dawn Smith**
**Dowden & Smith, L.L.C.**
**301 South Third Street**
**Leesville, Louisiana 71446**
**(337) 238-2800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Christopher Sepulvado**

**Christina Edwards**
**In Proper Person**
**715 Blockhouse Road**
**Many, Louisiana 71449**
**PRO SE DEFENDANT/APPELLEE:**
    **Christina Edwards**

**CONERY, Judge.**

This case comes before the Court on a reversal and remand from the Louisiana Supreme Court.

In the underlying appeal, the plaintiff, Garrett Bass (Mr. Bass), sought to reverse the trial court's June 8, 2020 judgment granting the defendant Christopher Sepulvado's exception of peremption pursuant to La.Civ.Code art. 198, thereby dismissing Mr. Bass's petition to establish the paternity of S.J.S.[2] The mother of S.J.S., Christina Edwards, resumed her maiden name after her divorce from Mr. Sepulvado, and was named as a defendant in Mr. Bass's petition for paternity. Ms. Edwards filed a pro-se brief acknowledging that Mr. Bass was the father of S.J.S. On initial review, in a 3-2 ruling, this court reversed the trial court's ruling granting Mr. Sepulvado's exception of peremption pursuant to La.Civ.Code art. 198 and dismissed Mr. Bass's suit. *See Bass v. Sepulvado*, 20-608 (La.App. 3 Cir. 6/30/21) (an unpublished opinion) (2021 WL 2694865). We did so on the basis that Mr. Sepulvado made a judicial confession pursuant to La.Civ.Code art. 1853 that Mr. Bass was, in fact, the biological father of S.J.S., as well as an admission at trial to that same effect. Also, DNA evidence introduced at trial undeniably established that Mr. Bass is the biological father of S.J.S. *Id.*

The Louisiana Supreme Court subsequently granted writs, remanding this case to this Court by Per Curiam opinion, as follows:

> **Writ granted.** The judgment of the appellate court is hereby reversed and this case is remanded to the court of appeal for a consideration of whether the requirements of La. C.C. art. 198 were met in light of this Court's decision in *Kinnett v. Kinnett*, 2020-01134, _ So.[3]d _, 2021

---

[2] The minor child's initials are used throughout. *See, e.g.,* Uniform Rules—Courts of Appeal, Rule 5—2.

WL 5860935, *reh'g denied*, 2020-01156, _ So.[3]d _, 2022 WL 263066 (La. 1/28/22).

*Bass v. Sepulvado*, 21-1124, p. 1 (La. 2/15/22), 332 So.3d 1174, 1174.

After reviewing the supreme court's decision in *Kinnett v. Kinnett*, 20-1134 (La. 12/10/21), 332 So.3d 1149, we find that a reversal of the underlying trial court judgment and remand to the trial court is required.

## FACTS AND PROCEDURAL HISTORY

Before beginning a discussion of the factual and legal issues on remand, we find from the uncontroverted facts in the record, the following:

**August 2, 2003** – Ms. Edwards and Mr. Sepulvado were married.

**October 16, 2016 - October 17, 2017** - Mr. Bass and Ms. Edwards were involved in an intimate sexual relationship. Ms. Edwards testified she did not use birth control during the entire the year 2017.

**April 2017 -** Ms. Edwards believed her minor daughter S.J.S. was conceived but is not sure of the exact date. At the time, Ms. Edwards was having unprotected sex with both Mr. Bass and Mr. Sepulvado. Mr. Sepulvado was working offshore and was gone for two or more weeks a time. Sometime between Ms. Edwards learning of her pregnancy and Mr. Sepulvado's petition for divorce in August, Ms. Edwards told Mr. Sepulvado she was pregnant and there was a possibility the child was not his.

**August 14, 2017** - Mr. Sepulvado filed a Petition for Divorce pursuant to La.Civ.Code art. 103.2 based on adultery. He named Mr. Bass as the biological father of the fetus. Mr. Bass was not a party to that proceeding and hence was never served with the petition. Mr. Sepulvado testified the petition was dismissed, but there is no evidence of a dismissal in the record.

**October 2017** - Mr. Sepulvado and Ms. Edwards reconciled and began living together again.

**January 5, 2018** - S.J.S. was born. Mr. Sepulvado was named as the father of S.J.S. on the birth certificate.

**March 28, 2018 -** Mr. Sepulvado and Ms. Edwards again separated.

**March 29, 2019** – Ms. Edwards filed for divorce based on the couple living separate and apart for a year.

2

**April 4, 2019** – Mr. Sepulvado and Ms. Edwards's divorce became final.

**May 2019 -** Ms. Edwards and Mr. Bass resumed their relationship. Ms. Edwards had a hysterectomy and thus, would not be able to have any more children. Shortly thereafter, Ms. Edwards and Mr. Bass begin living together.

**July 2019** – Ms. Edwards and Mr. Bass became engaged to be married.

**August 10, 2019** – After Ms. Edwards and Mr. Bass were engaged, Ms. Edwards told Mr. Bass "that there was a possibility that [S.J.S.] was his."

**September 20, 2019** - Mr. Bass immediately sought a DNA test and received the results which demonstrated that there was a 99.997% chance that S.J.S. was his child.

**November 25, 2019** – Mr. Bass filed a Petition To Establish Paternity seeking to "be recognized as the natural and biological father" of S.J.S. and to add his name to the birth certificate of S.J.S. The petition was filed approximately one year and ten months after the birth of S.J.S, but only two (2) months after he received the DNA test establishing that he was the biological father of S.J.S.

**December 13, 2019 -** Mr. Sepulvado filed a Peremptory Exception pursuant to La.Civ.Code art.185, claiming that he was the presumed father of S.J.S. as she was born during the marriage, and that Ms. Bass's claim was perempted pursuant to La.Civ.Code art. 198.

**June 5, 2020** – After several continuances and the delays associated with the COVID-19 public health emergency, the trial court held a hearing on Mr. Sepulvado's peremptory exception to Mr. Bass's Petition to Establish Paternity.

**June 8, 2020** – Judgment was issued by the trial court granting Mr. Sepulvado's exception pursuant to La.Civ.Code art. 198. The trial court did not issue any findings of fact or reasons for ruling.

**July 8, 2020** – Mr. Bass timely filed a devolutive appeal in this court.

**May 4, 2021** - Mr. Bass's appeal was heard on the May 2021 Docket by a panel of this court, without oral argument.

**May 25, 2021 -** A Five Judge Panel was appointed to hear the appeal, also without additional briefing and oral argument.

**June 30, 2021** – The 3-2 opinion of the appellate court was released reversing the trial court's June 8, 2020, judgment and granting Mr. Bass's avowal action naming him as the father of S.J.S. Judge Savoie filed a dissent, joined by Judge Kyzar.

**July 30, 2021 -** Mr. Sepulvado filed a writ with the Louisiana Supreme Court seeking to reverse this court's ruling.

**February 15, 2022 -** The Louisiana Supreme Court granted Mr. Sepulvado's writ, and remanded the case to this court to review in light of their ruling in *Kinnett*.

**March 2, 2022** – Mr. Bass did not request a rehearing in the supreme court, and the case was remanded to this court.

Finding error of fact and law, we reverse the trial court and remand for further proceedings in light of the supreme court's ruling in *Kinnett,* 332 So.3d 1149.

## LAW AND DISCUSSION

Consideration here begins with the supreme court's directive to consider "whether the requirements of La.C.C. art. 198[3] were met in light of [the supreme] [c]ourt's decision in *Kinnett*, [332 So.3d 1149,]" a case released subsequent to this panel's original opinion in this case. *See Bass*, 332 So.3d at 1174.

The supreme court began its discussion in *Kinnett* with the foundational consideration of the burden of proof applicable to consideration of the one-year

---

[3] Louisiana Civil Code Article 198 provides in pertinent part:

A man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.

If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child. **Nevertheless, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted within one year from the day the father knew or should have known of his paternity**, or within ten years from the day of the birth of the child, whichever first occurs.

….

The time periods in this Article are peremptive.

(Emphasis added.)

4

peremptive period of Article 198.  The supreme court explained:

> "Peremption has been likened to prescription; namely, it is prescription that is not subject to interruption or suspension." *Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620, 626-27; *Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065, 1082. The rules governing the burden of proof as to prescription also apply to peremption. *Id.* Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. *Id. But, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed.* Id.

*Id.* at 1154 (emphasis added).  It is on this basis that we find that a *de novo* review of the record is now required.

Unlike the situation in *Kinnett*, Mr. Bass's Petition to Establish Paternity is preempted on its face as he filed the avowal action on November 25, 2019 and alleged therein that the minor child, S.J.S., was born on January 5, 2018.  He thus filed the petition more than one year after the child's birth.[4]  Notably, and again unlike *Kinnett*, Mr. Bass did not include in the petition a plea of the exception to La.Civ.Code art. 198 of bad faith on the part of Ms. Edwards.  At the hearing, however, there was no objection to any of the evidence as to paternity as well as the applicability of the "bad faith" exception to the peremptive period, and therefore we find the pleadings were expanded and the evidence, such as it is, was properly admitted.  *See* La.Code Civ.P. art. 1154 (providing, in part:  "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading.").  *See also Hataway v. AKAL Sec., Inc.*, 17-398 (La.App. 3 Cir. 12/18/17), 235 So.3d 1189.

---

[4] Although the biological father's avowal action at issue in *Kinnett* was filed more than eighteen months after the birth of the minor child, the avowal action was not preempted on its face as the biological father "pled the exception to Article 198's one year peremptive period for an avowal action" and, thus, "the action is not preempted on the face of the pleadings[.]" *Id.* at 1154. Under those circumstances, the supreme court explained, the burden of proof was on the exceptor and presumptive father, Mr. Kinnett. *Id.*

5

Given the burden of proof set forth in *Kinnett*, 332 So.3d 1149, Mr. Bass was required to bear the burden of demonstrating that his Petition to Establish Paternity was not perempted. Mr. Bass was therefore required to prove that 1) Ms. Edwards acted "in bad faith" as to Mr. Bass's paternity of S.J.S. and that 2) the Petition to Establish Paternity was filed within one year of the day he knew or should have known of his paternity. *See* La.Civ.Code art. 198. *See also Kinnett*, 332 So.3d 1149.

Review of the hearing transcript, however, indicates that the parties and trial court proceeded under an incorrect burden of proof, one requiring Mr. Sepulvado to prove that Ms. Edwards was not in bad faith rather than one requiring Mr. Bass to prove the reverse. At the beginning of the hearing on the exception of peremption, the trial court asked the parties how they wished to proceed with the following colloquy reflecting some degree of confusion regarding the burden of proof:

> **THE COURT:** Ms. Smith you had filed this exception.
>
> **MS. SMITH [Counsel for Mr. Sepulvado]:** Yes, I have, Your Honor.
>
> **THE COURT:** How would you like to proceed, Ms. Smith? Mr. Sylvia [Counsel for Mr. Bass]?
>
> **MS. SMITH [Counsel for Mr. Sepulvado]:** Your Honor, I would like to go ahead an[d] offer and introduce the actual Petition for Paternity that was filed by Mr. Bass in these proceedings. And at that point in time, I believe I've made my prima facie case for p[er]emption, and now the ball is in Mr. Sylvia's court to rebut.
>
> ….
>
> **MR. SYLVIA [Counsel for Mr. Bass]:** Well, Your Honor, I do believe that it is her exception. And if that's the only evidence she intends to introduce, I'm prepared to go forward.
>
> **MS. SMITH [Counsel for Mr. Sepulvado]:** It's not the only evidence I intend to introduce. I'm saying I've made my prima facia case. You have a defense to my exception, which I can then rebut.
>
> **THE COURT:** Is there anything else you wish to offer? Any

6

testimony –

> **MS. SMITH [Counsel for Mr. Sepulvado]:** Yes, Your Honor.

> **THE COURT:** - or anything like that to bolster your case or not?

> **MS. SMITH [Counsel for Mr. Sepulvado]:** Yes.

> **THE COURT:** Okay.

> **MS. SMITH [Counsel for Mr. Sepulvado]:** Yes, Your Honor.

> **MR. SYLVIA [Counsel for Mr. Bass]:** Then I think, Your Honor, then that needs to be presented first. It's her exception.

> **THE COURT:** Okay. I think that's what's getting ready to happen.

Following that discussion, the order of hearing followed as if Mr. Sepulvado was required to bear the burden of proof on the exception of peremption, *i.e.*, 1) counsel for Mr. Sepulvado introduced exhibits and called witnesses on behalf of Mr. Sepulvado, 2) counsel for Mr. Bass called witnesses on behalf of Mr. Bass;[5] and 3) counsel for both parties recalled witnesses on rebuttal.

Following counsel for Mr. Sepulvado's rebuttal questioning, however, counsel for Mr. Bass attempted to recall another witness on rebuttal but was denied that opportunity as seen by the following colloquy:

> **MS. SMITH [Counsel for Mr. Sepulvado]:** Nothing further, Your Honor.

> **THE COURT:** Sir, do you have any questions of the gentleman?

> **MR. SYLVIA [Counsel for Mr. Bass]:** No. I'd like to call – recall another rebuttal witness to that testimony.

---

[5] Counsel for Mr. Bass also introduced documentary evidence but only did so at the close of all testimony.

**THE COURT:** This is rebuttal. She's rebutting you right now. This is her motion, she's rebutting.

**MR. SYLVIA [Counsel for Mr. Bass]:** Okay.

**THE COURT:** Do you have any questions of him?

**MR. SYLVIA [Counsel for Mr. Bass]:** I have none.

**THE COURT:** Thank you, sir.

After counsel for Mr. Sepulvado declined to call additional witnesses, the trial court took the matter under submission with no additional comment and filed a judgment with no reasons or findings a few days later.

The trial court's failure to either offer oral or written reasons complicates this court's review, as it is difficult to determine if the application of the incorrect burden of proof affected the trial court's ruling. As the supreme court explained in *Kinnett*,

> A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So.2d 731, 735; *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). However, where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record. *Evans*, 708 So.2d at 735. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *Id.* Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Id.*

*Id.* at 1154.

Given the factual circumstances of *Kinnett*, the supreme court concluded that there "was no legal error that materially affected the outcome or interdicted the fact-finding process. To the contrary, the district court was informed on the proper burden of proof, then determined the critical facts." *Id.* at 1154-55. Thus, the supreme court concluded that the fifth circuit had fallen into error in performing a *de novo* review. *Id.*

The converse is present in this case. Although neither the trial court nor the parties in this matter had the benefit of *Kinnett*, as it was subsequently rendered, the parties and the trial court nonetheless proceeded to the hearing under the incorrect burden of proof. That application resulted, in the least, in Mr. Bass assuming a defensive posture and in being denied the opportunity to proceed on rebuttal as he would have otherwise. Further, it is "[w]hen the findings are based on determinations regarding the credibility of witnesses" that "the manifest error-clearly wrong standard demands great deference to the findings of fact[.]" *Hebert v. Rapides Par. Police Jury*, 06-2001 (La. 4/11/07), 974 So.2d 635, 654 (on rehearing). That deferential standard is in place as "only the factfinder is cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* (citing *Rosell*, 549 So.2d 840 (La.1989)). That deferential standard is therefore not applicable in this case, as it was in *Kinnett*, since the trial court in this case made absolutely no factual findings or credibility determinations. We therefore find that a *de novo* review is required, but even applying the manifest error standard of review, because of the state of the record, reversal and remand is necessary.

In this case, the state of the record makes it impossible to provide any meaningful review given the supreme court's direction on remand to consider whether the requirements of La.Civ.Code art. 198 have been met in light of *Kinnett*, 332 So.3d 1149. *Kinnett* provides the following directive regarding the subjective and credibility-based nature of the bad faith exception to peremption under La.Civ.Code art. 198:

> The operative terms in Article 198 are "bad faith" and "deceived." "Bad faith" is a "[d]ishonesty of belief, purpose, or motive." Black's Law Dictionary (11th ed. 2019). Although "deceived" is not in Black's

9

Law Dictionary, "deception" is defined as "[t]he act of deliberately causing someone to believe that something is true when the actor knows it to be false." Black's Law Dictionary (11th ed. 2019). Merriam-Webster also defines deception as "the act of deceiving." Thus, deception is a deliberate act that causes someone to believe something the actor knows to be false. To "know" something is to be aware of the truth or factuality of it. Merriam-Webster's Dictionary (11th ed. 2021). The question here is whether Ms. Kinnett made a deliberate representation to Mr. Andrews regarding his paternity that she knew was false. *The credibility of Ms. Kinnett's belief as to her child's father is the critical issue.*

*Id.* at 1155 (emphasis added) (footnote omitted).

Moreover, and most importantly to a resolution in this case, the supreme court in *Kinnett* stated: *"We also note that deceit can result from silence. If Ms. Kinnett knew her husband was not the father and Mr. Andrews was, her silence could constitute bad faith deception."* *Id.* at 1155 n.3 (emphasis added).

Mr. Bass's primary contention in opposition to Mr. Sepulvado's exception of peremption is *deceit by silence*. Mr. Bass claims that he was deceived by Ms. Edwards as she continued to live with her former husband after she became pregnant but did not inform him of his possible paternity. In fact, Ms. Edwards testified that while she eventually informed others, including Mr. Sepulvado, of Mr. Bass's paternity, she did not inform Mr. Bass of his likely paternity until **August 10, 2019**. When asked what was "special" about August 10, 2019, Ms. Edwards stated in her deposition introduced at the hearing that:

> Because we (referring to she and Mr. Bass) got engaged in July, and we were discussing the fact that I couldn't have any more kids because I had had a hysterectomy in May. It was just a conversation we were having on the phone, and I told him that there was a possibility that [S.J.S.] was his.

Her testimony at the hearing was also clear that she never informed Mr. Bass of his

10

possible paternity until August 10, 2019.[6] The trial court failed to make a credibility assessment of Ms. Edwards's testimony as to the timeline associated with her knowledge regarding the paternity of S.J.S., nor her testimony indicating that she said nothing to Mr. Bass until August 2019. The trial court's omission is important as the supreme court in *Kinnett* described inquiry as to bad faith silence as the "critical issue" before it. *Id.* at 1155. On *de novo* review, we are unable to make such a credibility determination, either of Ms. Edwards or the other witnesses, given the cold record before us. It is plain that the record, as it exists, does not support the trial court's grant of the exception of peremption as there are no credibility findings nor any findings of fact as to whether Mr. Bass was "deceived by silence" or otherwise deceived. As stated, there are no factual or credibility findings and no reasons for ruling whatsoever.

Given the deficiencies in the record resulting in part from the erroneous burden of proof applied at trial, we conclude that a new hearing is required. A remand for a new hearing will permit the parties to proceed under the burden of proof identified in *Kinnett* and to present their evidence in light of the standard of "bad faith" discussed therein.

We further note that the original hearing in this matter occurred in June 2020, when S.J.S. was two (2) years old and well before the supreme court released *Kinnett*, 332 So.3d 1149, in October 2021. S.J.S. is now over four (4) years old. A new hearing under the appropriate burden of proof will afford the parties the opportunity to take all of the circumstances of this case into account. It will further allow the trial court to make the credibility and factual findings necessary for further review

---

[6] *See,* e.g., record pages, 222-27, 230-33.

as may be supported by the law and evidence, given that credibility determinations were explained to be critical in determining the "bad faith" exception to the peremptive period of La.Civ.Code art. 198 discussed in *Kinnett*. We accordingly remand this matter for a new hearing.[7]

## DECREE

For the foregoing reasons, the judgment of the trial court's June 8, 2020 judgment is reversed. This matter is remanded for a new trial on the Exception of Peremption filed by Defendant-Appellee Christopher Sepulvado. Costs of this appeal are to be shared equally by the parties pending final resolution of this case.

**REVERSED AND REMANDED.**

---

[7] Though not pleaded in the original hearing, nothing herein precludes Mr. Bass and/or Ms. Edwards on remand from raising the issue of the constitutionality of La.Civ.Code art. 198. *See, e.g., Kinnett v. Kinnett*, 17-625 (La.App. 5 Cir. 8/6/20), 302 So.3d 157, 187 (Wicker, J.,concurring opinion).

**GARRETT BASS**

**VERSUS**

**CHRISTOPHER SEPULVADO, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

**SAVOIE, J. dissents and assigns written reasons.**

This matter is before us on remand from the Louisiana Supreme Court. We are ordered to consider whether the requirements of La.Civ.Code art. 198 were met in the present case in light of the Louisiana Supreme Court's recent decision in *Kinnett v. Kinnett*, 20-1134 (La. 10/10/21), 332 So.3d 1149. The majority finds that the state of the record precludes us from making such a decision and remands to the trial court for a new hearing. I respectfully disagree.

Initially, I would point out that I disagree with the majority's list of uncontroverted facts. For example, included as an uncontested fact is that on August 10, 2019, "[a]fter Ms. Edwards and Mr. Bass were engaged, Ms. Edwards told Mr. Bass 'that there was a possibility that [S.J.S.] was his.'" As discussed later in this dissenting opinion, several witnesses testified that Mr. Bass knew of his paternity prior to this date and as early as the summer of 2017. Mr. Bass's knowledge of his possible paternity, specifically when Ms. Edwards' told him he was the minor child's father, is part of the central issue in this case.

Moving on to the analysis, *Kinnett* is very similar procedurally and substantively to *Bass*. In *Kinnett*, DNA evidence proved Mr. Andrews to be the minor child's biological father. This evidence resulted in Mr. Andrews intervening in the divorce proceeding of Mr. and Ms. Kinnett in order to establish paternity and obtain custody of the child. Mr. Andrews alleged that Mrs. Kinnett concealed the

fact that he may be the father. He also alleged unconstitutionality of La.Civ. Code art. 198. In response, Mr. Kinnett filed an exception of peremption, alleging the avowal action was untimely under La.Civ.Code art. 198. After a hearing, the trial court found Mr. Andrews' avowal action was perempted under La.Civ.Code art. 198 and upheld the constitutionality of Article 198. Mr. Andrews appealed to the Fifth Circuit Court of Appeal. The Fifth Circuit reversed the ruling of the trial court on the merits, finding that Mr. Andrews' avowal action was not perempted, however, it did not address the constitutionality of Article 198. Specifically, the Fifth Circuit found that the trial court applied the wrong burden of proof and performed a *de novo* review of the record. After a review of the record, the Fifth Circuit found that Ms. Kinnett did deceive Mr. Andrews and further found that Mr. Andrews' petition was timely, reversing the trial court. The supreme court reversed the Fifth Circuit, finding Mr. Andrews was not deceived, and his avowal claim was perempted. The *Kinnett* case was remanded to the Fifth Circuit "for the limited purpose of addressing Mr. Andrews' constitutional challenge."[1]

At the outset of the opinion in the present case, the majority determines that a *de novo* review of the record is required, rather than a manifest error review. In making this determination, the majority finds that the trial court applied the wrong burden of proof. The majority notes that the supreme court "began its discussion in *Kinnett* with the foundational consideration of the burden of proof applicable to consideration of the one-year peremptive period of Article 198." The supreme court in *Kinnett* did so because the issue of who held the burden of proof was argued by the parties at both the trial court and appellate court levels. This issue is absent in *Bass*. Neither party in the present case argued that the trial court applied the wrong burden of proof. Burden of proof is not assigned as an assignment of error by Garrett Bass. The only issue presented by Garrett Bass in his brief to this court is "[w]hether

---

[1] The present case, *Bass*, does not involve a constitutional challenge.

2

or not the trial court errored [sic] in finding that the premptive [sic] period in the petition for paternity had lapsed or that the action for paternity was not timely filed."

Considering the petition is preempted on its face, I agree with the majority that Mr. Bass bears the burden of proving the peremptive period was interrupted; however, I do not agree that the trial court proceeded under an incorrect burden of proof. The majority relies on the order of the proceedings at the trial court level to prove that the trial court applied the wrong burden. As explained in the majority opinion, Mr. Sepulvado introduced and called witnesses, then Mr. Bass introduced and called witnesses, and finally both parties called witnesses on rebuttal. At that point, the case was submitted to the court for judgment. I do not find any error with the way the hearing proceeded, and certainly cannot ascertain the burden of proof applied based on the order of events.

The majority also finds fault with the trial court's failure to offer either oral or written reasons, stating that it complicates this court's review to determine whether the trial court applied the wrong burden of proof. Again, burden of proof is not an issue on appeal in this case that was argued by either party. Regardless, "a trial court is never required to give oral reasons and is not required to give written reasons for its 'findings of fact and reasons for judgment' unless requested by a party in most types of non-jury cases." *Gathen v. Gathen*, 10-2312, p. 9 (La. 5/10/11), 66 So.3d 1, 12 (quoting La.Code Civ.P. art. 1917).

"Applying the wrong burden of proof is . . . inherently prejudicial because it casts a more onerous standard than the law requires on one of the parties." *Leger v. Leger*, 854 So.2d 955, 957 (La.App. 3 Cir. 2003). However, in this particular case, the majority reasons that the trial court placed the more onerous burden on Mr. Sepulvado, rather than Mr. Bass. Even though he was tasked with the more onerous burden at trial, the trial court still ruled in Mr. Sepulvado's favor. Thus, Mr. Sepulvado was not prejudiced by any alleged incorrect burden shift. When

3

discussing whether to apply the manifest error review, the *Kinnett* court explained that "[a] legal error occurs when a trial court applies incorrect principles of law and *such errors are prejudicial.*" *Kinnett*, 332 So.3d at 1154 (emphasis added). "Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Id.* In this case, even assuming the trial court applied the incorrect burden of proof, Mr. Sepulvado was not prejudiced, the parties were not deprived of substantial rights, and the outcome was not materially affected.

In summary, I do not find any confusion over whether the trial court applied the proper burden of proof. First, neither party argued that the trial court applied the improper burden of proof. Therefore, it is not an issue before this court. Further, this court cannot assume that the trial court applied the incorrect burden of proof based on a lack of oral or written reasons when the trial court is not required to give those reasons. Similarly, I do not believe the order in which the trial court proceeded at the hearing is evidence that the trial court applied the wrong burden of proof. For these reasons, I would apply the manifest error standard in reviewing this case.

The majority opines that, even applying the manifest error standard, a reversal and remand is warranted. The majority arrives at this opinion by finding that the deferential standard is not applicable in this case. When reviewing a case under the manifest error standard, great deference is given to the findings of fact. *Hebert v. State Farm Fire and Casualty Company*, 21-10 (La.App. 3 Cir. 8/4/21), 325 So.3d 1090, *writ denied*, 21-1358 (La. 11/17/21), 327 So.3d 992. The majority opinion finds that the deferential standard is not applicable because "the trial court in this case made absolutely no factual findings or credibility determinations." This is incorrect. The trial court held a hearing in which evidence was taken, witnesses testified, and arguments were made. The trial court then ruled in favor of Mr. Sepulvado. The trial court clearly had to make findings of fact and judge credibility in order to reach a conclusion and rule on the exception.

4

As stated previously, a trial court is not required to give oral or written reasons. We, as a reviewing court, cannot conclude, in the absence of oral or written reasons, that a trial court made no factual findings or credibility determinations. "[A] reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous." *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993). In the present case, the trial court found that Mr. Bass's petition was filed untimely. It is our job, as the reviewing court, to review the record and determine whether the trial court was manifestly erroneous. While oral or written reasons may make our job easier, we cannot neglect our duty due to a lack of reasons given by the trial court.

We must now resolve the issue that is on appeal and on remand – the exception of peremption. Regarding manifest error review, this court in *Hebert*, 325 So.3d at 1093, explained:

> When reviewing factual determinations for manifest error, the issue is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was reasonable. [*Stobart*, 617 So.2d 880]. If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. *Id*. Additionally, where factual findings are based on determinations regarding the credibility of witnesses, great deference is afforded to those factual findings under the manifest error standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Factual findings based on the fact finder's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous. *Id*. This rule applies equally to the fact finder's evaluation of expert testimony. *Lasyone v. Kansas City S. R.R.*, 00-2628 (La. 4/3/01), 786 So.2d 682.

This matter was previously before us on this same exception of peremption. I wrote a dissenting opinion in that case, *Bass v. Sepulvado*, 20-608 (La.App. 3 Cir. 6/30/21) (unpublished opinion), *rev'd and remanded per curiam*, 21-1124 (La. 2/15/22), 332 So.3d 1174. I will incorporate the applicable analysis from that dissent into this one:

5

Before this court is an exception of peremption. The applicable law is found in La.Civ.Code art. 198, which states:

A man may institute an action to establish his paternity of a child at any time except as provided in this Article. The action is strictly personal.

If the child is presumed to be the child of another man, the action shall be instituted within one year from the day of the birth of the child. Nevertheless, if the mother in bad faith deceived the father of the child regarding his paternity, the action shall be instituted within one year from the day the father knew or should have known of his paternity, or within ten years from the day of the birth of the child, whichever first occurs.

In all cases, the action shall be instituted no later than one year from the day of the death of the child.

The time periods in this Article are peremptive.

The comments to this codal article are instructive. Comment (f) (emphasis added) explains:

The *only* exception to the time period of one year for the institution of an avowal action by the biological father is if the mother in bad faith deceives the father concerning his paternity. In such case the father may institute the action within one year from the day he knew or should have known of the birth of the child or within ten years of the child's birth, whichever first occurs. See former C.C. Art. 191 (2004) and R.S. 9:305.

As the biological father, Mr. Bass's right to present his avowal action must be done within the time frame allowed by law when the child has a legal or presumptive father. *Id.* The minor child, S.J.S., has a legal father - Mr. Sepulvado. Therefore, because of inaction on the part of Mr. Bass in failing to institute his action within a year of the date of the child's birth, he must rely on the only exception provided which allows the period to be extended if he was deceived as to his paternity.[2] Mr. Sepulvado's knowledge regarding the paternity of S.J.S. is of no consequence. The only issue before this court is whether Mr. Bass's late action falls under the exception to extend the period for filing his avowal action.

Judge Kyzar gives an excellent and thorough recitation of the trial testimony in his dissenting opinion. I incorporate and adopt that discussion here.

---

[2] While the biological father has one year from the date of the birth of the child to institute his avowal action where there is a legal or presumptive father, a child may establish filiation at any time up to one year from the death of the alleged father, even in cases where there is also a legal father. La.Civ.Code art. 197.

"[T]he action shall be instituted within one year from the day the father knew or should have known of his paternity." La.Civ.Code art. 198. In the Petition to Establish Paternity, Garrett Bass stated that he was in a sexual relationship with Ms. Edwards from October 2016 through October 2017. Therefore, Mr. Bass was in a sexual relationship with Ms. Edwards during her pregnancy up until she was approximately seven months pregnant, wherein it was admitted that they repeatedly had unprotected sex. Further, several witnesses testified that Mr. Bass did, in fact, know of his paternity by the summer of 2017. As such, I do not find that the trial court was manifestly erroneous in finding that this action was not instituted within one year from the day Mr. Bass knew or should have known of his paternity. Therefore, in order for Mr. Bass's petition to be timely, Mr. Bass must prove the one exception to La.Civ.Code art. 198 - if the mother in bad faith deceives the father concerning his paternity.

The *Kinnett* case is instructive. The question for the court in *Kinnett*, the supreme court explained, was "whether Ms. Kinnett made a deliberate representation to Mr. Andrews regarding his paternity that she knew was false." *Id.* at 1155. The supreme court stated, "The credibility of Ms. Kinnett's belief as to her child's father is the critical issue." *Id.*[3] Ms. Kinnett testified that she believed Mr. Kinnett was the father of her child, even though she knew it was possible that Mr. Andrews was the father. The supreme court found that because Ms. Kinnett believed Mr. Kinnett was the child's father, she "did not tell Mr. Andrews anything regarding his paternity that she knew was false." *Id.* at 1156. Therefore, she did not deceive him, and Mr. Andrews' petition was perempted.

In the present case, the trial court heard all of the testimony, looked at the totality of the evidence, and weighed the credibility of the witnesses. Mr. Bass and

---

[3] It should be noted that in its discussion of "deceit by silence," the majority opinion states that "inquiry as to bad faith silence" is the "critical issue" in *Kinnett*. This is a mischaracterization of the holding in *Kinnett*.

Ms. Edwards both testified that she did not tell him that he was the father of the minor child until August 2019. However, at the hearing, several witnesses disputed this fact, stating that Mr. Bass knew as early as the summer of 2017. One witness, Brenda Carter, Ms. Edwards's co-worker, about two months into Ms. Edwards's pregnancy, Ms. Edwards did not come into work. Ms. Edwards called, crying hysterically, to say she told Mr. Bass about the pregnancy, that the child was his, and that he told her he wanted nothing to do with the baby. In fact, Ms. Carter recounted that Ms. Edwards told her he wanted Ms. Edwards to have an abortion.

Regarding Ms. Edwards belief about the paternity of her child, that is unclear from the record. Her testimony in her deposition and at trial is contradictory. At one point, she testifies that she did not know who the father of her baby was. At another point, she states that she knew it was Mr. Bass's early on. There is no testimony in the record that Ms. Edwards ever told Mr. Bass that the child was Mr. Sepulvado's. Therefore, based on the record we cannot find that Ms. Edwards made a deliberate representation to Mr. Bass regarding his paternity that she knew was false. *See Kinnett*, 332 So.3d 1149.

The majority orders this case remanded to the trial court for a new hearing because the majority is "unable to make [] a credibility determination [as to bad faith silence], either of Ms. Edwards or the other witnesses, given the cold record before us[,]" citing to a footnote in the *Kinnett* case that "deceit can result from silence." In doing so, the majority determines that the trial court failed to make a credibility assessment of Ms. Edward's testimony. This is incorrect. As stated previously in this dissent, a full hearing was held wherein evidence was adduced, witnesses testified, and arguments were made. It is clear from the record that the trial court was required to weigh the credibility of the witnesses in order to rule on the exception in this case. It is also clear from the record that the trial court did make a credibility assessment of Ms. Edward's testimony and found her testimony lacking

in credibility. As such, while deceit can result from silence, the trial court found that was not the case in this matter.

The manifest error standard of review indeed applies here, and the trial court, after hearing the evidence, determined that Mr. Bass did not prove that he was deceived by Ms. Edwards. I can find no manifest error in that decision based on the evidence. The trial judge heard the witnesses and was in the best position to determine the weight and credibility to be afforded thereto. Accordingly, I would affirm the judgment of the trial court granting the exception.

GARRETT BASS

VERSUS

CHRISTOPHER SEPULVADO, ET AL.

**KYZAR, Judge, dissents and assigns reasons.**

I respectfully dissent from the decision of the majority to remand this matter to the trial court for reconsideration of its judgment sustaining the exception of peremption pursuant to La.Civ.Code art. 198. The purpose of our reconsideration of this case, on reversal and remand from the supreme court, was solely to determine if the requirements of La.Civ.Code art. 198 were met in light of the supreme court's decision in *Kinnett v. Kinnett*, 20-1134 (La. 12/10/21), 332 So.3d 1149. A review of the record reflects that the issue of Ms. Edwards' bad faith and whether Mr. Bass proved an exception to the peremption rule were fully addressed and rejected by the trial court as reflected by its judgment. I would affirm the judgment.

In his petition to establish his paternity of the child, Mr. Bass very plainly acknowledged the status of Mr. Sepulvado as the legal father of the child, as follows: "[S.J.S.] was born during the marriage between Defendants and therefore defendant Christopher Sepulvado is legally presumed to be the father of [S.J.S.]" As the child was born during the Sepulvados' marriage, Mr. Sepulvado had the opportunity to disavow his paternity but chose not to do so within one year of the child's birth. La.Civ.Code arts. 187, 189. Thus, he is not only the child's presumptive father, but also her legal father.

As this matter involves a legal father, Mr. Bass was obligated to present his avowal action within one year of the child's birth as required by La.Civ.Code art. 198. However, due to inaction on his part, Mr. Bass must rely on the only exception provided, which allows the period to be extended in the event he was deceived as to his paternity.[1]

While going to considerable lengths in determining that the trial court applied the wrong burden of proof standard and that this somehow skewed its fact-finding process, the majority ignores its recognition that the peremption issue was fully litigated. Indeed, this issue was fully litigated, and another hearing will not change that except to give the opposing party a third bite at the apple when it knew or should have known of the correct order of the proceeding and the applicable burden of proof. The provisions of our law are very clear that once a prima facie case of peremption is presented, the burden shifts to the opponent to show the existence of an exception. At the original trial, Mr. Bass had two chances to establish Ms. Edwards' bad faith, once during cross examination of Mr. Sepulvado's witnesses and then again while presenting his own case. The majority now gives him a third shot at proving her bad faith and that he was deceived, when the trial court by its very judgment concluded that there was no proven exception to La.Civ.Code art. 198.

There is nothing about the colloquy at the beginning of the hearing that reflects that the burden of proof was altered in any way. Albeit the trial court asked counsel for Mr. Sepulvado if he had any further evidence to bolster his argument after he initially offered only the petition, which does provide a prima facie case for peremption, this did not alter the burden of proof. Counsel for Mr. Sepulvado

---

[1] While the biological father has one year from the birth of the child to institute his avowal action when there is a legal or presumptive father, a child may establish filiation at any time up to one year from the death of the alleged father, even in cases where there is also a legal father. La.Civ.Code art. 197.

2

answered in the affirmative and proceeded to offer testimony. The only affect this had on the proceeding was to allow counsel for Mr. Bass to fully hear and weigh all of Mr. Sepulvado's evidence before attempting to counter the same. This he could not do after being given this extra opportunity. Even assuming that the burden of proof was somehow placed on the mover, Mr. Sepulvado, which is only arguable at best, such clearly did not interdict the fact-finding process. Only in such a case would a *de novo* review be warranted. *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731.

In his testimony, Mr. Sepulvado recounted that Ms. Edwards, also a party to the action, told him that she had informed Mr. Bass that he was the biological father of the child. In fact, his recitation of the conversation she related to him was very vivid:

A.   Yes, ma'am. When she found that she was pregnant and notified him, he told her that if she ever let knowledge be told of the baby that it was his, and it interrupted his marriage, that - excuse my language - he would kill her and her bitch baby.

Q.   And do you recall when she told you this?

A.   It was around October.

Q.   Of 2017?

A.   Yes, ma'am.

Q.   Again, this was before [S.J.S.] was actually born?

A.   Yes, ma'am.

Q.   And did she state that at any point in time prior to [S.J.S.'s] birth that Garrett wanted to be involved in the child's life?

A.   In the conversation that we had on December the 11th, she said that he had come to her apologetic, and that he wished he had been there for more of it, and he wanted to be part of her life at that time.

Q.   And that was the following year? That was December the 11th of 2018, right?

3

A.     Yes, ma'am.

Q.     So, [S.J.S.] had already been born.

A.     Yes, ma'am.

Q.     And what was she - well, I guess we already had that I introduced, but if - do you have any personal knowledge as far as whether or not Garrett knew, like, that he had - before the child was born - like, he didn't come to you and tell you that he knew that he was the father of [S.J.S.]?

A.     We had a phone conversation one time where he said that it was a Bass baby, but he didn't actually come out and tell me that it was his. I have Christina and her mother both telling me that it was his, and –

Q.     And can you tell me when this was?

A.     Her mother's was after -

Q.     No. No. No. When Garrett - when Garrett?

A.     It was during the time we were separated. It was probably June? July?

Q.     And he had told you at that -

THE COURT: Of what year, ma'am?

**WITNESS -CONTINUING:**

A.     2017.

Q.     And he told you at that time he believed that that was a Bass baby?

A.     Yes, ma'am.

Per the evidence, the child was born on January 5, 2018. At the time of Mr. Bass's conversation with Mr. Sepulvado in June or July 2017, Ms. Edwards was pregnant with the child, and Mr. Bass had, at the least, information that he may have been the biological father; thus, he was not deceived. Further, at the time of the December 2018 conversation between Mr. Bass and Ms. Edwards, as recounted by Mr. Sepulvado, the time limitation for Mr. Bass to file a paternity action had not yet expired. Mr. Sepulvado also recounted a telephone conversation he had with Mr.

4

Bass, wherein Mr. Bass called to inquire why he was mentioned by name in Mr. Sepulvado's initial divorce petition against Ms. Edwards as the father of her then unborn child.

Brenda Carter, a former co-worker of Ms. Edwards, recounted that about one and a half to two months into Ms. Edwards' pregnancy, she (Ms. Edwards) confided to her that she had been involved in a relationship with Mr. Bass. She then recounted another conversation in April or early June 2017, wherein Ms. Edwards called to report that she would be late for work:

Q.  Do you recall her saying anything about how - whether she was going to tell Garrett Bass about -

A.  Well, actually, about the time that I became aware of their relationship is also - she was scheduled to come into work one day. And it was either late April or early June she was supposed to come to work, and she called in and told me that she was not going to be able to - to make it in on time. She was hysterical, crying. So, when she got to work that day, she told me that she had spoken with Garrett and that Garrett wanted her to have an abortion.

Q.  Okay.

A.  And that he didn't want anything to do with the baby.

Q.  Okay. Did she say that she had told him that the child was his –

A.  Yes.

Q.  - and not Chris's?

A.  Yes.

Q.  Okay. All right. And this would have been 2017?

A.  Yes.

Phyllis Greer, Mr. Sepulvado's mother, testified regarding a conversation with Ms. Edwards in July 2017, when Ms. Edwards told her that she had confronted Mr. Bass with the news that he was the father of her child:

5

Q. And up to that point in time, did you have any conversations with Christina Edwards about who the father was of this child?

A. Yes, after that I did.

Q.. Do you recall when this was?

A Probably around June or July.

> THE COURT: Ma'am, I'm having a little trouble hearing you.

> WITNESS PHYLLIS GREER: I'm sorry.

> THE COURT: That's fine.

### WITNESS -CONTINUING:

A. It was probably July.

Q. Of 2017?

A. Yes, ma'am.

Q. And did she tell you that she had told Mr. Bass that he was likely the father of the child?

A. Yes. And he was in denial then, because she came back to her house crying, saying that she had went and tried to get him to sign his rights away so he would never come back in to try to take [the baby]. And that's when he had threatened to kill her and the baby.

Q. And do you recall when that month was?

A. I know it was in - it was probably October of '17 she told me that.

Q. And was that around the same time that she and Christopher ended up getting back together?

A. Yes.

Even more testimony as to the issue came from Mr. Bass's former wife, Renata Bass, who testified about confronting her then husband in October 2017, about his affair with Ms. Edwards, at a time when Ms. Edwards was still pregnant with S.J.S.:

Q. Okay. And did you confront him about that?

6

A     Yes, ma'am.

Q.     And who were the text messages between?

A.     It was between Christina and Garrett.

Q     Christina?

A.     Sepulvado?  Edwards?

Q.     Okay.  All right.  And between your husband?

A.     Yes, ma'am.

Q.     Okay.  And the nature of the text messages led you to understand that they were having an affair?

A.     Yes, ma'am.

Q.     All right.  And when you - did you try to speak to Mr. Bass about this?

A.     Yes, ma'am.

Q.     What was his reaction?

A.     The cell phone was broken.  The TV was broken, and I had a busted head.  That was basically it.

Q.     And that was from what he did.

A.     Ma'am?

Q.     That was what he did?

A.     Yes, ma'am.

Q.     Okay.  Did - did you find out that Christina was with child?

A.     Yes, ma'am.  We knew she was with child, but first they tried to tell me the baby from [sic] his brother, Trinity's baby, 'til I find those text messages in October.

Q.     Okay.  So Garrett was trying to claim it was for his brother?

A.     Yes, ma'am.

Q.     Okay.  And then the text messages, was the - was Christina's pregnancy discussed?

7

A. It was about - talking about who was at his house and she love [sic] him so much and she want to be with him and the baby together and want a family and all of that. Yes, ma'am.

Q. Okay. And were you able to gather from those text messages who the father was of her child?

A. Yes, ma'am.

Q. Was it Trinity?

A. No.

Q. And who in those text messages was the father of the child?

A. That was Garrett.

Later in her testimony, Ms. Bass stated that Mr. Bass "didn't admit that the child is not his a hundred percent." She said that "[h]e wasn't sure if the child could be his, but he wasn't sure."

The trial court heard Ms. Edwards' testimony that she did not tell Mr. Bass that he was the father of S.J.S. until August 10, 2019. She attempted to establish through extensive testimony why she thought Mr. Sepulvado was the biological father. She even testified that Ms. Carter, Mr. Sepulvado, and Ms. Greer all lied. Based on the judgment of the trial court, little if no credibility was given to Ms. Edwards' testimony.

Finally, Mr. Bass' testimony echoed Ms. Edwards' testimony that he first learned that he was S.J.S.'s biological father in August 2019. When asked if he had even considered that he might be the father after Ms. Edwards became pregnant during her affair with him, he said he had not because "I assumed it was [Mr. Sepulvado]." Based on the judgment of the trial court, little if no credibility was given to Mr. Bass' testimony.

The majority asserts that this court cannot presume that the trial court properly weighed the testimony or made credibility determinations, as we cannot determine

8

from the record that such was done as there were no reasons for judgment. I disagree wholeheartedly. It is important here to note that during the testimony of Mr. Sepulvado, Ms. Carter, Ms. Greer, and Ms. Bass, counsel for Mr. Bass attempted to impeach these witnesses on several occasions; thus, it is clear the trial court was in a position to weigh these witnesses' testimonies and consider their credibility in arriving at its decision to sustain the exception of peremption. The fact that there are no reasons for judgment does not change that. "Appeals are taken from the judgment, not the reasons for judgment." *Greater New Orleans Expressway Comm'n v. Oliver*, 02-2795, p. 3 (La. 11/18/03), 860 So.2d 22, 24. "The written reasons for judgment are merely an explication of the Trial Court's determinations. They do not alter, amend, or affect the final judgment being appealed[.]" *State in the Interest of Mason*, 356 So.2d 530, 532 (La.App. 1 Cir. 1977).

Thus, taking into consideration the wealth of testimony at trial concerning Mr. Bass's knowledge of his potential paternity and the timing of his knowledge, it is clear that all of La.Civ.Code art 198 was fully considered by the trial court and I find no manifest error in its decision. Indeed, counsel for Mr. Bass argued vehemently that he was deceived such that the peremptive period did not began to run until the year immediately prior to the filing of his paternity action. The trial court rejected that argument as evidenced by its judgment sustaining the exception.

While I am mindful of the inequities of this case, given the undisputed fact that Mr. Bass is S.J.S.'s biological father, we must decide this case based on the law, not equity. Louisiana Civil Code Article 198 was enacted "to protect the child from the upheaval of such litigation and its consequences in circumstances where the child may actually live in an existing intact family with his mother and presumed father or may have become attached over many years to the man presumed to be his father." La.Civ.Code art. 198, Revision Comments—2005 (e). It is not our function to

9

question this purpose as the law is clear and unambiguous. On the other hand, Louisiana has long recognized that there are situations where children may enjoy dual paternity rights. *Warren v. Richard*, 296 So.2d 813 (La.1974), and *Succession of Mitchell*, 323 So.2d 451 (La.1975). As stated in *Durr v. Blue*, 454 So.2d 315, 318 (La.App. 3 Cir. 1984):

> These cases involve children whose fathers were presumed to be the husbands of their mothers, but who were in fact the biological children of other men. In *Warren*, the Court recognized the right of a child to recover for the wrongful death of its biological father, and in *Mitchell*[,] the Court recognized that children have rights to the succession of their biological father. In both cases, there had been no disavowal action by the husband of the mother who was presumed to be the legal father of the children, thus leaving a situation in which the children could possibly enjoy dual paternity rights.

In *Kinnett*, the supreme court considered these equities, or inequities as the case may be, and held that while they may exist, the law already provides solutions for such situations. It noted that while "Article 198 focuses on the rights of the biological father to establish paternity[,]" "the rights of a child to establish filiation are addressed by La. Civ. Code art. 197, which provides in part, '[a] child may institute an action to prove paternity even though he is presumed to be the child of another man.'" *Kinnett*, 332 So.3d at 1157. The supreme court further noted that "[a] child's action is not subject to any peremptive period, except with regard to succession rights, where it must be brought within one year of the alleged father's death[]" and that a child "may institute an action to establish filiation to [the biological father], even though [the biological father's] avowal action is perempted." *Id.*

Here, the trial court did not err in applying the law, neither the text of the law nor the burden of proof thereon. The manifest error standard of review applies here, and the trial court, after hearing the evidence, determined that Mr. Bass did not prove that he was, in fact, deceived. I can find no manifest error in that decision. The trial

10

court has already heard the witnesses, and it was in the best position to determine the weight and credibility to be afforded thereto. In fact, it had to do so in order to reach its decision considering the wealth of testimony on the issue. Another trial is a waste of judicial resources and, as stated earlier, only gives one side of this dispute another opportunity to meet a burden that he was unable to meet, arguably, twice previously. Accordingly, I would affirm the judgment of the trial court sustaining the exception of peremption.